IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DARYL WARD,

        Plaintiff,

vs.                                               CIVIL NO.  00-767 LH/LFG-ACE

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION
## TO EXTEND PRETRIAL DEADLINES IN PART

THIS MATTER is before the Court on Plaintiff Daryl Ward's ("Ward") February 26, 2001 Motion to Extend Pretrial Deadlines [Doc. 28]. Defendant Burlington Northern and Santa Fe Railway Company ("BNSF") opposes the motion.

### Background

Ward filed suit alleging a violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* He contends that he was not hired by BNSF because he wore a leg brace and walked with a limp. BNSF, on the other hand, asserts that it did not hire Ward because it believed that he had failed a portion of a pre-employment test battery administered to applicants for employment.

BNSF contracts with Aon Consulting, a third party, to design, administer and score pre-employment tests. BNSF contends that Aon Consulting reported to BNSF that Ward failed a portion of the pre-employment test. As a result, BNSF did not hire Ward. BNSF argues that the information it relied on constitutes a legitimate, non-discriminatory reason for its refusal to hire Ward.

**Case Management Plan**

At the Rule 16 conference, the Court considered the parties' Provisional Discovery Plan and the parties' proposal for establishing appropriate case management deadlines. These deadlines are imposed as part of the Court's responsibilities under the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.* ("CJRA"). Case management deadlines are imposed to ensure that the CJRA's two-pronged goals of expediting the ultimate disposition of litigation and reducing the costs of litigation can be accomplished.

> The purpose of this legislation is to promote for all citizens--rich or poor, individual or corporation, plaintiff or defendant--the just, speedy and inexpensive resolution of civil disputes in our Nation's Federal courts.

S. Rep. No. 101-416, at 1(1990), reprinted in 1990 U.S.C.C.A.N. 6804

To ensure that delay and costs are kept to a minimum, courts schedule cut-off dates for discovery, motion practice, submission of expert reports and submission of pretrial orders. Case management deadlines are intended to ensure that a case proceeds through the court system efficiently, expeditiously and economically.

As part of BNSF's Rule 16 disclosures, it provided all documents in its possession that were relevant to the claims and defenses in this case; it also disclosed, but did not produce, the actual test administered to Ward. BNSF did not object to producing the test, but only to producing it without a confidentiality order or other protection to provide for the test's integrity. BNSF also notified Ward, as part of BNSF's Rule 26 initial disclosures, that Aon Consulting was an entity that had knowledge of the disputed issues, specifically, that it was the consultant that prepared and administered the test.

At no time prior to the expiration of the discovery deadline did Ward seek to secure the test scores from Aon Consulting, nor did he seek to take the deposition of any Aon party or representative. Ward filed no motion to compel discovery of the test, test sheets or scores within the deadlines previously established by the Court's scheduling order [Doc. 13].

Discovery is now over and all case management deadlines elapsed.[1]

## Present Motion

Now, after expert disclosure deadlines and discovery deadlines have elapsed, Ward seeks to reopen discovery and other case management deadlines so as to obtain information concerning the test administered to Ward. Ward argues that BNSF kept promising it would produce the test and test scores, and therefore, was "lulled" into a false sense of security, Ward argues that a disallowing discovery rewards BNSF for its misconduct in not producing the test scores and sheets.

The Court rejects this contention. Indeed, this was the subject of a prior hearing conducted on February 13, 2001. After a telephonic hearing, the Court entered an order which provided:

> Plaintiff, Daryl Ward, seeks to have Defendant produce a written test administered to Plaintiff during the employment application process, together with Plaintiff's test scores, and to the extent available, Plaintiff's original test sheet.
>
> Defendant Burlington Northern and Santa Fe Railway Company did not object to Plaintiff's original request, conditioned on Plaintiff executing a confidentiality order so as to protect the integrity of the test. Defendant provided Plaintiff with a proposed confidentiality order, but through some error or inadvertence, the cause of which is unknown, the confidentiality order was not executed and, consequently, Defendant did not provide the test material.
>
> BNSF indicates that it has in its possession and is willing to produce its test booklet, subject to the entry of a confidentiality order, but that

---

[1] In a prior order, Doc. 25, the Court abated remaining deadlines while it considered Ward's motion to reopen discovery.

3

> the test scoring is not performed by Defendant. Rather, Defendant maintains a contractual agreement with an independent consulting company to evaluate and grade the tests. Thus, Defendant does not have the Plaintiff's test or grade sheets. Defendant is willing to contact the consulting company to obtain the test scores and, to the extent available, to obtain Plaintiff's original test paper.

The Court found no fault then, nor does it find fault now, with BNSF's failure to produce the test or test scores. Indeed, BNSF advised Ward of its possession of the test and agreed to provide it if Ward executed a confidentiality order. The order was not executed for some time, notwithstanding the fact that BNSF provided Ward with a proposed confidentiality order. Moreover, the Court finds that the original test and original answer sheet or test scores were not in BNSF's possession, but in the possession of a third party. To facilitate Ward's acquisition of these documents, BNSF undertook to contact Aon Consulting to obtain this information.

At the February hearing, Ward requested modification of all case management deadlines, arguing that he had not performed written discovery, had taken no depositions, and had not consulted with an expert because of the missing test or test sheets.

The Court authorized Ward to file a formal request for an extension, affording Ward an opportunity to establish good cause. The Court's order states, "If Plaintiff is able to establish good cause on the motion, the Court will extend deadlines; if the Court concludes that good cause has not been shown, the request will be denied." In accord with the Court's directive, Ward filed the present motion.

Since the Court's telephonic conference, BNSF contacted Aon Consulting and, as part of BNSF's attempt to obtain test sheets and scores, learned that Ward did not, in fact, fail the test. As a result of this disclosure, Ward now requests additional discovery.

4

**Analysis**

Whether Ward passed or did not pass the test may not be the controlling factor. Rather, the issue is whether BNSF can proffer a reason for its failure to hire that is not, on its face, proscribed by Title VII. Panis v. Mission Hills Bank N.A., 60 F.3d 1486, 1490 (10th Cir. 1995); EEOC v. Flasher Co., 986 F.2d 1312, 1316 n. 4 (10th Cir. 1992).

Birge v. Apfel, 141 F.3d 1184(table text in Westlaw, No. 97-2158, 1998 WL 165118) (10th Cir. Apr. 2, 1998) involved a somewhat analogous situation. Plaintiff, a state judge, unsuccessfully applied for a position as an Administrative Law Judge with a federal agency, even though she had scored higher than similarly situate male applicants, she was not hired. Judge Birge bellieved that she was not hired because of her gender.

 As part of its business-justified, non-discriminatory explanation for its failure to hire her, the federal agency provided evidence that it had considered various newspaper articles that were critical of Judge Birge's performance in her prior judicial position. These articles brought into question the judge's judicial temperament, and, thus, her qualifications. The defendant argued that its failure to hire the applicant had nothing to do with her gender, but was based on the belief that the applicant lacked an appropriate judicial temperament. Judge Birge, on the other hand, stated that the information relied on by the agency was flawed. She further argued that an investigation into the accuracy of the newspaper articles would have shown the articles and accusations to be false, and that defendant's reliance on unsubstantiated information injected "unrestricted caprice" into the process.

Both the trial court and the Tenth Circuit rejected Judge Birge's claim that the employer was bound to investigate the legitimacy of the information upon which it relied. As long as the employer could proffer an explanation showing a non-discriminatory reason for its actions, the law was satisfied, "defendant is required only to proffer a reason that is, not on its face, proscribed by Title

5

VII." Birge at *3; Panis at 1490-1491.

The Tenth Circuit further stated:

> "Title VII does not compel every employer to have a good reason for its deeds; it is not a civil service statute." Fisher, 986 F.2d at 1321 (quotation omitted). An employer does not "need to litigate the merits of its reasoning, nor does it need to prove that the reason it relied upon was bona fide, nor does it need to prove that the reasoning was applied in a non-discriminatory fashion."

Birge at *3 at 1361; see also Panis at 1491.

In light of these authorities, the Court concludes that even if information is now available showing that Ward did not fail the test, additional discovery at this time is unwarranted.

What is key is whether BNSF had a reason, not proscribed by Title VII, for what it did or failed to do, not necessarily whether Ward passed or didn't pass the test. Of course, under the "burden shifting" requirement of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824 (1973), and this circuit's own decision in Elmore v. Capstan, Inc., 58 F.3d 525, 529 (10th Cir. 1995), if the Court accepts BNSF's preferred, non-discriminatory reason, the burden shifts again to Ward to show that BNSF's reasons were not the true reasons for their failure to hire him.

Ward offers no convincing explanation as to why he did not initiate other discovery within the time frame established by the parties and approved by the Court. Nor does Ward convince the Court that his failure to consult with an expert, especially a damage expert, was justified. Indeed, no convincing explanation has been presented as to why Ward could not have consulted his economist and complied with the Rule 26 expert report requirements in a timely fashion. Therefore, Ward's request to reopen discovery and grant additional time to secure expert reports required under Rule 26 will be denied.

However, as the Court abated further case management deadlines pending the disposition of this motion, the Court will now issue new deadlines:

> Pretrial motions, other than discovery motions,
> shall be filed with the Court no later than          July 23, 2001
>
> Pretrial Order:
>   Plaintiff's portion to Defendant                   August 31, 2001
>   Defendant to the Court on or before                September 17, 2001

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge


ATTORNEY FOR PLAINTIFF:
Warren F. Frost, Esq.

ATTORNEYS FOR DEFENDANT:
Earl E. DeBrine, Jr., Esq.
Daniel W. Long, Esq.
David M. Pryor, Esq.